# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

)
BRET D. LANDRITH, *et al.*,                )
)
               Plaintiffs,                )
)
         v.                )      Civil Action No. 12-1916 (ABJ)
)
JOHN G. ROBERTS, JR.,                )
)
             Defendant.                )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Bret D. Landrith and Samuel K. Lipari, proceeding *pro se*, bring this action for injunctive and declaratory relief against the Honorable John G. Roberts, Jr., Chief Justice of the United States Supreme Court ("Chief Justice") in his capacity as administrator of the Judicial Conference of the United States ("Judicial Conference"). Plaintiffs believe that their constitutional rights have been violated in a multitude of ways, and that these violations are ultimately attributable to, and redressable by, the Chief Justice and the Judicial Conference. Plaintiffs have additionally filed a motion for leave to file a second amended complaint, a motion for Rule 11 sanctions against defendant and his counsel, and two motions requesting an ECF password. The Chief Justice filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and opposes plaintiffs' motions to amend their complaint and for sanctions.

Because the Court finds that plaintiffs lack standing as to Counts I and II of the first amended complaint and that Count III is moot, the Court will grant the Chief Justice's motion to dismiss the case. The Court will also deny plaintiffs' motion for leave to file a second amended

complaint on the basis of futility. The Court will deny plaintiffs' motion for Rule 11 sanctions, and will deny plaintiffs' motion for an ECF password as moot.

## BACKGROUND

### I. Factual Background

Plaintiff Landrith is a disbarred former attorney and plaintiff Lipari, a "medical supply business owner," is his former client.[1] *See* Am. Compl. [Dkt. # 11] ¶¶ 4, 7, 49. Plaintiffs are frequent litigants in state and federal court, *see, e.g.*, Attach. 1 to Def.'s Mot. to Dismiss [Dkt. # 9-1] at 6–7 (detailing numerous lawsuits brought by Landrith), and contend they have been mistreated and "repeatedly vilified" by federal judges, Am. Compl. ¶¶ 33–36. In this lawsuit, they claim that the Chief Justice, in his capacity as the administrator of the Judicial Conference, violated their rights under the First Amendment and the Due Process Clause of the Constitution.[2] *Id.* at 2, 40, 48, 51. They seek prospective injunctive and declaratory relief to redress their asserted injuries, *id.* at 43, 50, 52, which fall into four general categories.

First, plaintiffs assert that they have been injured by federal judges in retribution for bringing multiple lawsuits challenging the alleged monopolization of the medical supply industry. *Id.* ¶¶ 35–36. They claim that federal judges have adopted a "widespread practice" of dismissing their antitrust and RICO claims under Rule 12(b)(6) "with scurrilous attacks on the plaintiff and his counsel." *Id.* ¶ 28. According to plaintiffs, these "attacks" have "denied [Lipari] the constitutional right to operate a business," as well as "an unbiased forum" to pursue

---

[1] Because plaintiffs proceed *pro se*, the Court "take[s] particular care to construe the plaintiff[s'] filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myers Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

[2] Plaintiffs presumably assert their claims under the Due Process Clause of the Fifth Amendment, although they do not specify this in their amended complaint.

his claims, and resources for his medical supply business. *Id.* ¶¶ 10, 13, 32. Plaintiffs further contend that federal judges have conspired to enforce a "Code of Silence" against them. *See, e.g.*, *id.* ¶ 7; Pls.' Answer to Def.'s Mot. to Dismiss [Dkt. # 15] ("Pls.' Answer") at 3, 17. This "Code" allegedly causes federal judges to tolerate misconduct by government attorneys and the judiciary at the expense of plaintiffs' rights, Am. Compl. ¶¶ 7, 12, and deprives plaintiffs of meaningful appellate review, *id.* at 49.

Second, plaintiffs assert that Landrith has been a victim of retaliation by state and federal officials for his representation of racial minority clients in civil rights actions. *Id.* ¶¶ 44–45. According to the amended complaint, Landrith's disbarment by the Kansas Supreme Court – and reciprocal disbarment by federal courts in Kansas and Missouri – was in retribution for bringing these suits. *Id.* ¶¶ 4, 45. Plaintiffs also assert that Landrith's name has been placed in "state and national law enforcement databases," including a secret "Do Not Work List" allegedly maintained by the U.S. Department of Homeland Security pursuant to the "USA PATRIOT Act II." *Id.* ¶¶ 50–51. As a result, plaintiffs claim that Landrith has lost numerous job opportunities and is "ineligible for even a part time worker [sic] at McDonalds' [sic] franchise restaurants." *Id.* ¶ 51. Plaintiffs further allege that judicial retaliation under the "Code of Silence" prevented an "intimate associate" of Landrith's from admission to the Nebraska Bar, *id.* ¶ 52, and caused both the cancellation of Landrith's federal food stamp benefits, and a Kansas court's alleged threat to jail Landrith for failure to pay child support, *id.* at 45-46.

Third, plaintiffs contend they have been injured by the misconduct of state and federal officials, including the Chief Justice and his counsel in this case. *See, e.g.*, *id.* ¶¶ 69, 85–86, 100. They allege widespread judicial tolerance of "misrepresentations" of fact and law by state and federal prosecutors. *See, e.g.*, *id.* ¶¶ 65–69 (claiming that unnamed judges applied a heightened

standard for Rule 12(b)(6) to plaintiffs' cases, and that the Kansas Attorney General, DOJ attorneys, and the U.S. Attorney for the District of Kansas misrepresented key precedent during litigation against plaintiffs). In addition, they claim that the Chief Justice and his counsel have committed "abuse of process" and "the ethical misconduct of dishonesty toward the tribunal" before this Court by declining to respond to plaintiffs' offers of settlement, misstating aspects of plaintiffs' pleadings, making arguments with which plaintiffs disagree, and filing a motion to dismiss. *Id.* ¶¶ 74, 80, 89, 98–103, 105–08, 112–13. Plaintiffs express the concern that defendant has invited the Court to "commit fraud" on itself. *Id.* ¶ 98.

Fourth, plaintiffs assert that they are the targets of surveillance and interference by the FBI and DOJ, and that these intrusions have increased in retaliation for filing this lawsuit.[3] *Id.* ¶¶ 31, 114–20. They claim that the "scurrilous attacks by federal judges" have led the FBI and DOJ to investigate them as "dangers to large corporations or national security." *Id.* ¶ 31. Plaintiffs also contend that since they brought this lawsuit, the government has interfered with their cell phone service, email accounts, and website. *Id.* ¶¶ 31, 81–82, 114–15, 117–18; *see also id.* ¶ 120 (alleging the existence of a "secret part or unpublished part of USA PATRIOT Act" that "address[es] citizens posting information about the courts on the Internet" and presumably authorizes the claimed disruptions). They insist that these technological difficulties were a "direct response to" this lawsuit. *Id.* ¶ 124.

According to the amended complaint, all of these injuries are attributable to, and redressable by, the Chief Justice in his capacity as the administrator of the Judicial Conference. Plaintiffs assert that federal judges and government attorneys are "employees" of the Chief

---

3      Plaintiffs also allege that Lipari's nephew has been subjected to surveillance and other interferences because he was "identified in [Lipari's] business plans as a candidate for executive officer" of Lipari's medical supply business. Am. Compl. ¶¶ 85–86.

Justice and compare the Chief Justice to a "Walmart [sic] store manager" who "permit[s] . . . employees . . . to shoplift, embezzle, and injure its customers." *Id.* ¶¶ 72–73, 125. Plaintiffs also contend that Attorney General Eric Holder is the Chief Justice's "agent" because he "report[s] to the . . . Chief Justice . . . by statute."[4] *Id.* ¶¶ 123–24. Therefore, they claim, the Chief Justice may be held responsible for the alleged actions of the DOJ, as well.

## II. Procedural Background

Plaintiffs filed their original complaint on November 26, 2012, Compl. [Dkt. # 1], and defendant moved to dismiss on March 11, 2013, Def.'s Mot. to Dismiss [Dkt. # 9]. In response to defendant's motion, plaintiffs filed an amended complaint on April 1, 2013. Am. Compl. [Dkt. # 11]. The Court denied defendant's initial motion to dismiss as moot on April 5, 2013, Order [Dkt. # 12], and defendant moved to dismiss plaintiffs' amended complaint on April 22, 2013, Def.'s Renewed & Supplemental Mot. to Dismiss [Dkt. # 14]. On May 23, 2013, plaintiffs filed both a motion for leave to file a second amended complaint, Mot. for Leave to Amend Compl. Under Rule 15 [Dkt. # 17] ("Mot. to Amend"), and a motion for sanctions against defendant and his counsel, Pls.' Rule 11 Mot. for Sanctions [Dkt. # 18] ("Pls.' Mot. for Sanctions"). In addition, on March 1, 2013, plaintiffs filed a motion requesting access to the electronic filing system pursuant to LCvR 5.4. Pls.' Mot. for CM/ECF Password [Dkt. # 5].

---

4       Although plaintiffs do not specify any particular statute, the Court presumes plaintiffs refer to 28 U.S.C. § 331, which provides that "upon request of the Chief Justice," the Attorney General will "report to [the Judicial] Conference on matters relating to the business of the several courts of the United States, with particular reference to cases to which the United States is a party." 28 U.S.C. § 331 (2012).

Plaintiffs renewed that motion on May 23, 2013. Pls.' 2d Mot. for Leave to File Electronically via CM/ECF and to Receive Passwords [Dkt. # 17-1].[5]

## ANALYSIS

### I. The Court Will Grant Defendant's Motion to Dismiss

A. <u>Standard of Review</u>

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

#### 1. *Subject-Matter Jurisdiction*

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Because "subject-matter jurisdiction is 'an

---

5      The docket reflects that plaintiffs also filed a motion requesting access to electronic filing on March 7, 2013 [Dkt. # 7]. Since that motion is identical to the March 5, 2013 motion and because plaintiffs styled their May 23 motion as a "Second Motion for Leave to File Electronically," the Court will treat the March 5 and March 7 motions as one.

Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### 2. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original), quoting Fed. R. Civ. P.

8(a)(2). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

B. Plaintiffs Lack Standing as to Counts I and II

Article III of the U.S. Constitution permits federal courts to hear only "cases" and "controversies," and "[t]he requirement that a plaintiff have standing 'is an essential and unchanging part of the case-or-controversy requirement." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012), quoting *Lujan*, 504 U.S. at 560. Indeed, "a showing of standing 'is an essential and unchanging' predicate to any exercise of our jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996), quoting *Lujan*, 504 U.S. at 560. The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

To assert constitutional standing, a plaintiff must allege (1) a concrete and particularized injury, (2) that is "fairly traceable" to the defendant, and (3) that a favorable ruling by the court is capable of redressing. *Id.* at 560–61. If any one of these elements is missing, this Court may not entertain a plaintiff's claim. *Id*. at 560. Here, plaintiffs have failed to establish the causation and

redressability elements of standing as to Counts I and II of their amended complaint, and so these claims must be dismissed.[6]

### 1. *Counts I and II*

In Count I, plaintiffs seek injunctive relief from alleged infringements of their "First Amendment and Due Process rights under the Constitution." Am. Compl. at 40. The complained-of constitutional deprivations include the past cancellation of Landrith's federal food stamp benefits, a determination by "[t]he State of Kansas Shawnee District Court" that Landrith "is still in danger of being jailed for child support payments from a divorce decree in the absence of personal jurisdiction," Lipari's ongoing business-related difficulties, and the enforcement of the "Code of Silence" against them both. *Id.* at 45–47. Plaintiffs contend that the Chief Justice, as the administrator of the Judicial Conference, is responsible for these injuries because he: negligently allows federal judges to dismiss plaintiffs' claims under Rule 12(b)(6) "with scurrilous attacks" on them; negligently fails to protect plaintiffs from the "Code of Silence"; negligently or affirmatively fails to enforce canons of judicial ethics; and deprives Landrith of an opportunity to present evidence when he applies for admission to practice law in federal courts. *Id.* at 41–42. To remedy these alleged injuries, plaintiffs ask this Court to issue an injunction requiring the Chief Justice to change the policy of the Judicial Conference to allow ethics complaints against "judicial branch officials" to be posted publicly on the Internet. *Id.* at 43.

---

6       Although many of plaintiffs' alleged injuries may not be "concrete and particularized," the Court need not address that element because plaintiffs have failed to establish both causation and redressability. *See Kurtz v. Baker*, 829 F.2d 1133, 1138 (D.C. Cir. 1987) (finding it unnecessary to address all three elements of standing when one was not met).

Count II alleges substantially the same injuries as Count I, although plaintiffs additionally suggest that Lipari is being denied his right to counsel.[7] *See id.* at 48–50. Plaintiffs seek generalized declaratory relief, asking this Court to declare: (1) "[T]hat vilifying parties for bringing actions under [the Civil Rights Acts, the Sherman Antitrust Act, and RICO] before any discovery has been permitted violates [plaintiffs'] rights"; and (2) that the Constitution requires an evidentiary hearing in federal court before that court may reciprocally disbar an attorney. *Id.* at 50.

### 2. *Plaintiffs Have Not Established Causation*

To demonstrate the causation element of standing, plaintiffs must allege an "injury that is 'fairly traceable to the defendant's allegedly unlawful conduct.'" *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 189 (D.C. Cir. 2012), quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984). Causation is "substantially more difficult to establish" when a plaintiff's alleged injury is directly caused by a third party who is not before the court. *See Lujan*, 504 U.S. at 562 ("When . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed."). A defendant need not be the "but-for" cause of a plaintiff's injuries at the hands of a third party. *Massachusetts v. EPA*, 549 U.S. 497, 524 (2007) (stating that causation may be established when defendant caused an "incremental" part of plaintiff's alleged injury); *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987) (noting that causation may be established when a defendant's actions are "a substantial factor motivating the third parties' actions"). But it must be "substantially probable that the challenged acts of the defendant, not of some absent third party," have led to a plaintiff's

---

7       Presumably, plaintiffs intend to allege that Lipari has been denied the counsel of his choice, i.e. Landrith, who has been disbarred. *See also* (Proposed) 2d Am. Compl. Under Rule 15(a)(1)(B) [Dkt. # 17-3] at 55 (alleging the deprivation of Lipari's right to obtain counsel).

injury. *Bentsen*, 94 F.3d at 663 (citations omitted); *see also Grocery Mfrs.*, 693 F.3d at 176 (same).

Plaintiffs have not shown that it is "substantially probable" that the Chief Justice caused any of the injuries they allege in Counts I or II, all of which are attributed to third-party officials. Therefore, their injuries are not "fairly traceable" to the Chief Justice, and plaintiffs have failed to establish the causation element of standing.

Plaintiffs claim that the Chief Justice has allowed federal judges to vilify them and to wrongfully dismiss their claims, Am. Compl. at 41, 48–49, on the theory that these judges are his "employees," *id.* ¶ 125. But Article III of the Constitution makes it plain that they are not. *See* U.S. Const. art. III, § 1 (providing for life tenure for all federal judges "during good Behaviour"). The purpose of life tenure for federal judges is to ensure their independence, including from any "manager." *See* Am. Compl. ¶ 73 (describing the Chief Justice as the "manager" of other judges and officials). The Chief Justice cannot control the use of Rule 12(b)(6) by another federal judge in any given case, nor can he dictate the language of another judge's opinion. This means he also cannot restrain judges from participating in a "Code of Silence" through their opinions. *See id.* at 41, 49–50.

The Chief Justice and Judicial Conference also do not usually receive ethics complaints, nor do they oversee federal bar admission policies. The chief judge and judicial counsel of a given circuit, not the Judicial Conference, are charged with enforcing judicial ethics. *See* 28 U.S.C. §§ 351–352 (describing the process for review of ethics complaints against federal judges). The limited role of the Judicial Conference in judicial discipline includes cases of impeachment, *see id.* § 354(b), and appellate review of the actions of circuit judicial councils, *id.* § 357. Furthermore, ethics complaints against attorneys are handled by the relevant state or

federal bar, not the Judicial Conference.  Finally, each federal court, not the Judicial Conference, determines whether a given attorney should be admitted to its bar.  *See, e.g.*, Fed. R. App. P. 46 (describing guidelines for admission, suspension, or disbarment from circuit court bars).

Thus, plaintiffs have failed to demonstrate more than a speculative relationship – if any – between the Chief Justice and their claimed injuries.  It is therefore not "substantially probable" that the Chief Justice caused any of these injuries for purposes of standing.  Plaintiffs have therefore failed to establish the causation element of standing.

### 3.  *Plaintiffs Have Not Established Redressability*

Plaintiffs have also failed to establish the redressability element of constitutional standing for Counts I and II.  To satisfy this element, plaintiffs must demonstrate that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561, quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976). Moreover, there is a "further impediment to redressability" when the relief plaintiffs request is unlikely to remedy the injuries they assert.  *Id.* at 571 (holding plaintiffs had not met redressability requirement because it was "entirely conjectural whether the . . . activity that affects respondents [would] be altered or affected by the . . . activity they seek to achieve").

Even if this Court had the power to command the Chief Justice and Judicial Conference to allow public posting of judicial ethics complaints on the internet, as plaintiffs request in Count I, Am. Compl. at 43, that injunction would hardly address the myriad injuries plaintiffs describe in their fifty-four page amended complaint.  Likewise, even if this Court issued the generalized declarations of law that plaintiffs request in Count II, *id.* at 48, the impact would be speculative at best; just as the Chief Justice cannot control the actions of independent and life tenured judges, neither can this Court.  Plaintiffs have therefore not met the redressability requirement because it

is "entirely conjectural" whether any of the remedies they seek would meaningfully address the injuries they assert. *See Lujan*, 504 U.S. at 571. Plaintiffs have thus failed to establish the jurisdictional prerequisite of constitutional standing, and Counts I and II must be dismissed.

C. Count III is Moot

The "case or controversy" requirement of Article III, section 2, permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citation omitted). Like standing, mootness is a matter of constitutional jurisdiction, and a federal court may not hear a moot claim. *See Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003).

According to Count III of the amended complaint, the Chief Justice and his counsel have committed "Abuse of Process designed to deprive the plaintiffs of Due Process." Am. Compl. at 51. Plaintiffs claim that the Chief Justice, through the DOJ, has "further vilif[ied]" them and has acted in "extrajudicial prior restraint" of their First Amendment rights by interfering with a website intended to help expose the "Novation cartel" and its monopoly. *Id.* They also allege that the Chief Justice's arguments in his motion to dismiss are "based on misrepresentations of material facts and controlling case law" designed to "provide camouflage for the trial court to rule contrary to the US Supreme Court." *Id.* at 52.

For relief, plaintiffs ask this Court to strike the Chief Justice's motion to dismiss, to direct him to answer their amended complaint, and to enjoin the Chief Justice from making any further misrepresentations. But as this Court will dismiss Counts I and II of the amended complaint, the relief plaintiffs seek in Count III will "neither presently affect the parties' rights nor have a more-

than-speculative chance of affecting them in the future." *Clarke*, 915 F.2d at 701. Indeed, without Counts I and II, the underlying controversy is gone, and there is nothing further that this Court might direct the Chief Justice to do. Therefore, Count III of the amended complaint is moot.

## II. The Court Will Deny Plaintiffs' Motion for Leave to Amend the Complaint

### A. Standard of Review

Parties have the right to amend their pleadings once as a matter of course within certain timeframes, and the Court should "freely give leave" to further amend "when justice so requires." Fed. R. Civ. P. 15(a)(1)(A)–(B), (a)(2). When evaluating whether to grant a party's motion for leave to amend its complaint, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint. *Atchinson v. District of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed claim is futile when it "merely restates the same facts as the original complaint in different terms . . . or could not withstand a motion to dismiss." *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009), citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *see also Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005) ("While a court is instructed by the Federal Rules of Civil Procedure to grant leave to amend a complaint 'freely,' it need not do so where the only result would be to waste time and judicial resources. Such is the case where the Court determines, in advance, that the claim that a plaintiff plans to add to his or her complaint must fail, as a matter of law . . . .").

B.  Plaintiffs' Proposed Amendments to the Complaint are Futile

Here, plaintiffs have amended their complaint once before, *see* Am. Compl. at 1, and seek permission to amend it again, Mot. to Amend at 1.  Their proposed second amended complaint is identical to their amended complaint except that it includes two new counts and would add Attorney General Eric Holder as a defendant.  *Id*. ¶ 6; (Proposed) 2d Am. Compl. Under Rule 15(a)(1)(B) [Dkt. # 17-3] ("Prop. 2d Am. Compl.") at 54–64.  The Chief Justice opposes plaintiffs' motion on the basis that the proposed amendments are frivolous and futile. Def.'s Opp. to Pls.' 2d Mot. for Leave to Further Amend Compl. [Dkt. # 21] at 1.  The Court agrees with the Chief Justice.

In proposed Count IV, plaintiffs would allege that the Chief Justice has "knowingly participated in using government attorneys and law enforcement personnel" to discriminatorily prosecute plaintiffs, in violation of the Due Process Clause of the Fifth Amendment.  Prop. 2d Am. Compl. at 54–55.  They also wish to contend that the Chief Justice "has employed federal judges and Department of Justice attorneys breaking the model rules of ethical conduct," while simultaneously depriving Landrith "of his right to . . . present evidence that he was wrongfully disbarred."  *Id.* at 55.  Plaintiffs also wish to defend Lipari's right to pursue his hospital supplies antitrust litigation "free of the intimidation and coercion of [the Chief Justice's] agents and employees working to keep that market unlawfully monopolized by the Novation cartel."  *Id.* at 55.  They again allege that Lipari has been denied the right to obtain counsel.  *Id.*  Plaintiffs ask this Court for declaratory relief stating that Landrith has a constitutional right "to clear his name in federal courts," and that Lipari has constitutional rights to enforce contracts, to obtain legal counsel, and "to vindicate the federal antitrust laws and his own right to Equal Protection under the Fourteenth Amendment" free of "open and naked threats" by federal judges.  *Id.* at 56.

Proposed Count IV, however, "merely restates" the allegations of the amended complaint "in different terms," albeit with more vigor, and is therefore futile. *See Rumber*, 598 F. Supp. 2d at 102. Essentially, plaintiffs seek leave from this Court to once more allege that the Chief Justice has allowed his "employees" – federal judges and DOJ officials – to deprive Landrith of a reciprocal disbarment hearing, to deprive Lipari of a full opportunity to pursue his antitrust claims in court, and to vilify and persecute plaintiffs through the courts and through extrajudicial means. The only potentially new allegation in proposed Count IV relates to unethical conduct on the part of the Chief Justice's "agents and employees" – but those claims would fail for all of the reasons set forth above in connection with Counts I and II. *See supra* Analysis § I(B). Therefore, proposed Count IV is redundant and futile.

Proposed Count V is also futile. Here, plaintiffs seek declaratory and injunctive relief in recompense for a host of new allegations of corruption and misconduct by proposed new defendant Attorney General Eric Holder, as well as the DOJ and other federal officials. Prop. 2d Am. Compl. at 56–64. Plaintiffs assert violations of their

> clearly established constitutional right to be free from warrantless surveillance, pen register captures and wire taps, and free from bad faith warrant based surveillance to cover and attempt to launder earlier warrantless electronic surveillance and wire taps in furtherance of malicious investigations and malicious prosecutions of the plaintiffs for the purpose of depriving them of their property rights without trial or other court proceedings.

*Id.* at 56–57. They describe the DOJ as "an infiltrated enterprise captured by organized crime." *Id.* at 57. Quoting extensively from their own pleadings in three separate state and federal cases, plaintiffs allege that:

- Attorney General Holder "has had repeated notice of the violations of the constitutional rights of the plaintiffs by DOJ employees and by [the FBI]," *id.* at 57–58;

- Former Attorney General John Ashcroft has benefitted personally from the "Novation cartel," *id.* at 58–59;

- The DOJ Office of Professional Responsibility has been "capture[d]" by certain corrupt officials, *id.* at 59;

- The "Novation cartel" caused certain individuals to be "installed as US Attorney for the purpose of obstructing the plaintiffs' antitrust investigation and court proceedings," *id*;

- Other DOJ officials have conspired to prevent plaintiffs from disrupting the monopoly of the medical supply industry, *id.* at 59–61;

- A U.S. Senator caused the nomination of a U.S. Attorney who was married to a Missouri state judge "key to the Novation cartel," and the U.S. Attorney "spent the day after her swearing in . . . going over the plaintiffs' civil case files online," *id.* at 61;

- A different U.S. Attorney obstructed justice with respect to Lipari's litigation against the "Novation cartel," *id.*;

- Attorney General Holder has permitted continued surveillance of plaintiffs since 2002 without bringing criminal charges "for the sole purpose of obstructing justice through extrinsic fraud" as to plaintiffs' legal claims, *id.* at 62;

- Attorney General Holder has, through "extrinsic fraud," deprived "the Government's right" to have officials of various federal agencies "transact their official business honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction," *id.* at 63; and

- Attorney General Holder has violated plaintiffs' rights not to be subjected to warrantless wiretapping, to "censorship of Google," to "biased tribunals resulting from *ex parte* communications by of [sic] the DOJ and its FBI agents," and to unconstitutional enforcement of statutes, *id.* at 63–64.

Plaintiffs seek declaratory and injunctive relief from all of these alleged injuries. Specifically, plaintiffs ask this Court: (1) to declare "that the investigations and extrajudicial seizures of [plaintiffs'] property by the DOJ were malicious and violated the plaintiffs' Fourth and Fifth Amendment rights"; (2) to enjoin Attorney General Holder "and his agents" from surveillance and obstruction of justice as to plaintiffs; and (3) to enjoin Attorney General Holder "and his agents" from "maintaining any databases that report negative information about the plaintiffs for their private civil litigation in vindication of federal antitrust and civil rights statutes." *Id.* at 64.

The Court does not have the power to hear plaintiffs' claims. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations omitted). Subject-matter jurisdiction is lacking where a complaint "is patently insubstantial, presenting no federal question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (internal quotation marks omitted), quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994). A claim is "patently insubstantial" when it is "flimsier than doubtful or questionable . . . essentially fictitious." *Best*, 39 F.3d at 330 (internal quotations omitted); *see Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("[F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, [or] obviously frivolous." (citations and internal quotation marks omitted); *see, e.g.*, *Peters v. Obama*, Misc. No. 10-0298 (CKK), 2010 WL 2541066, at *1–2 (D.D.C. June 21, 2010) (*sua sponte* dismissing complaint alleging that President Obama had been served with and failed to respond to an "Imperial Writ of Habeas Corpus" by the "Imperial Dominion of Axemem," requiring the plaintiff's immediate release from a correctional institution).

Although mindful that complaints filed by *pro se* litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), plaintiff's allegations in proposed Count V present "no federal question suitable for decision." *Best*, 39 F.3d at 330. Therefore, proposed Count V is futile because it would not survive a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(6). *See*

*Rumber*, 598 F. Supp. 2d at 102. Because this Court has determined that the only changes plaintiffs propose to their complaint would be futile, their motion to file a second amended complaint will be denied.

### III. The Court Will Deny Plaintiffs' Motion for Rule 11 Sanctions

Plaintiffs move under Rule 11(b) for sanctions against the Chief Justice and his counsel. Pls.' Mot. for Sanctions. A court may impose Rule 11 sanctions if a party's pleading or other representation is presented for an improper purpose, is frivolous, or lacks evidentiary support. Fed. R. Civ. P. 11(b)–(c). "The imposition of Rule 11 sanctions is not something the court takes lightly," however, as "sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005). The test for Rule 11 sanctions is objective: the Court must determine "'whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim.'" *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 53 (D.D.C. 2013), quoting *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 100 (D.D.C. 2007).

In this motion, plaintiffs re-allege the same misconduct and ethical violations they assert in Count III of their amended complaint and in Count IV of their proposed second amended complaint. *Compare* Pls.' Mot. for Sanctions ¶¶ 3–13, *with* Am. Compl. at 51–52, *and* Prop. 2d Am. Compl. at 54–55. Specifically, they accuse the Chief Justice and his counsel of materially misrepresenting plaintiffs' claims, relevant case law, and the powers of the Chief Justice as administrator of the Judicial Conference. Pls.' Mot. for Sanctions ¶¶ 3–8. Plaintiffs further contend that the Chief Justice and his counsel have committed "extrinsic frauds in an attempt to obstruct justice" by causing disruptions of plaintiffs' email and cell phone service, Lipari's website, and Lipari's nephew's Internet service. *Id.* ¶¶ 9–13.

Plaintiffs' motion is meritless. There is no indication whatsoever that the Chief Justice has acted in bad faith with respect to the representations made in his pleadings; rather, the Chief Justice has made good-faith arguments with which plaintiffs simply disagree. Moreover, even if the Chief Justice and his counsel did misrepresent aspects of plaintiffs' complaint, as plaintiffs allege, the Court declines to find bad faith because plaintiffs' pleadings are difficult to decipher and because the minor errors plaintiffs allege do not warrant an "extreme punishment." *See Naegele*, 355 F. Supp. 2d at 144. Finally, plaintiffs' bare assertion that defendant has caused the disruption of their (and Lipari's nephew's) email, Internet, and cell phone service does not fall within the scope of Rule 11 because those activities do not constitute representations to the Court by defendant. Therefore, plaintiffs' motion for sanctions under Rule 11 will be denied.

## IV. Plaintiffs' Motions for CM/ECF Password

Plaintiffs filed two motions requesting access to the Court's electronic filing system. Pls.' Mot. for CM/ECF Password; Pls.' 2d Mot. for Leave to File Electronically via CM/ECF and to Receive Passwords. As the Court will dismiss plaintiffs' action in its entirety, plaintiffs' motions for access to electronic filing will be denied as moot.

## CONCLUSION

Because plaintiffs lack standing as to Counts I and II of their amended complaint, and because Count III is moot, the Court will grant the Chief Justice's motion to dismiss the amended complaint in its entirety. Moreover, because plaintiffs' proposed amendments to their complaint are futile, the Court will deny their motion for leave to amend their complaint. Plaintiffs' motion for Rule 11 sanctions against defendant and his counsel is meritless and will

also be denied. Finally, plaintiffs' motions for access to electronic filing are moot and will be denied. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: November 4, 2013